GEORGE T. GAMBLE v. SAMUEL G. M. GATES.

*Sale of timber—Time for removal—Reversion.*

A contract for the sale of all the white pine and Norway timber standing, lying, or being on certain land reserved the title in the vendor until the purchase price was paid, and gave the vendee five years in which to cut and remove the timber, and provided that whatever timber remained upon the land after the limit of the aforesaid five years should revert and become the property of the vendor.  And it is held that, even if the conditions of the contract had otherwise been performed, all timber remaining upon the land at the expiration of the five years, whether cut or uncut, reverted to the vendor.

Error to Bay.  (Cobb, J.)  Argued April 7, 1892. Decided July 28, 1892.

Replevin.  Plaintiff brings error.  Reversed.  The facts are stated in the opinion.

*James H. Davitt* (*T. E. Tarsney*, of counsel), for appellant.

*Chester L. Collins*, for defendant.

Long, J. December 26, 1885, Henry Gamble was the owner of certain lands in Bay county, and on that day he entered into a written contract with defendant. The contract contained the following stipulations:

"That the said party of the first part, upon the fulfillment by said second party of the conditions hereinafter mentioned, hereby agrees to sell, assign, transfer, and set over unto the said party of the second part all the white pine and Norway timber standing, lying, or being upon the following described pieces or parcels of land."

The contract then sets out the descriptions of land, and continues:

"Said party of the second part hereby agrees to purchase of said first party the white pine and Norway timber upon the above-mentioned lands as aforesaid, and to pay therefor the sum of $2,000 in the manner following, to wit: Said second party shall make and execute to said first party his promissory notes to the amount of $2,000, with interest at 7 per cent.; one note payable three months from date for $500, one note payable five months from date for $500, and one note payable one year from date for $1,000.

"It is also mutually understood and agreed that said second party may forthwith enter upon said lands, and cut and remove said timber, within the space of three years from the date hereof, and, if more time is required, second party is allowed two years more by paying all taxes levied or assessed on said land during the additional time required. And whatever of said timber shall remain upon said lands after the limit of the aforesaid five years shall revert and become the property of said first party.

"It is also mutually understood and agreed that the title to said timber shall be and remain in said first party until all the conditions and agreements contained in this

contract shall have been fulfilled, and the notes mentioned herein, with interest thereon, be fully paid."

In the winter of 1886-87 defendant commenced lumbering these lands, letting a contract to one Maloney, who did but little work under it. In December, 1888, defendant let the contract to Morris & McDougall. By the terms of this contract they were to take off all the timber, both pine and hardwood. After this contract was made, the defendant, in looking over his contract with Henry Gamble, discovered that it did not include the hardwood timber. He sent word to Mr. Gamble in reference to the matter, who sent his son, George, to Bay City, to see the defendant, where the following agreement was entered into between them:

"BAY CITY, MICH., Feb. 2, 1889.
"I am to account to Henry Gamble for hardwood now being cut by Morris & McDougall from lands in 17, 4 E., as follows: Ash, at $1.50 per M. feet; maple, at $1 per M. feet; elm, at $1.25 per M. feet, or more if I can get it out of the elm.
"S. G. M. GATES.
"Accepted, Bay City, Feb. 2, 1889.
"HENRY GAMBLE,
"Per G. T. GAMBLE."

Morris & McDougall took off a portion of the timber, and quit work. September 17, 1890, defendant made a contract with Albert Bassett to cut the remaining timber on the land into saw-logs. The logs were cut and skidded before December 22, 1890, and from 20,000 to 25,000 feet had been removed from the land to the railroad. In doing the work the logs would be cut one day and skidded the next day. It appears that the defendant paid all the notes, with the interest thereon, specified in the contract with Henry Gamble.

On December 23, 1890, for the consideration of $1,400, Henry Gamble conveyed to his son, George T. Gamble,

the plaintiff in this suit, all his right, title, and interest in and to any and all timber standing, lying, or being upon the lands described in the contract made with the defendant December 26, 1885. This contract of sale was made in writing, and authorized George T. Gamble to enter upon said lands, and to cut and remove any and all timber standing, lying, and being on said lands after December 26, 1890. It also assigns to George T. Gamble all rights of action which Henry Gamble has against defendant for any timber taken from said lands by defendant, except pine. timber taken by him under the contract dated December 26, 1885.

This is an action of replevin by George T. Gamble against the defendant to recover the timber cut under the Bassett contract, and not removed by the defendant prior to December 26, 1890, from the lands described in these contracts. The timber had all been cut and skidded before the five years had elapsed from the date of the contract between Henry Gamble and the defendant, but had not been removed from the land; and, at the time the action was brought, the defendant had not paid the taxes on the land as provided in the contract, but the taxes were paid by him during the progress of the trial of the case. The court below directed verdict and judgment for the defendant. Plaintiff brings error.

The contention upon the part of the plaintiff is that, by the terms of the contract, the timber remaining on the lands after five years from the date of the contract belonged to Henry Gamble, and that under the agreement between him and the plaintiff the title passed to the plaintiff, and that he rightfully took it under his writ; that the limitation provided in the contract was not confined to such of the timber as should remain standing, but applied equally to such of it as should

92 MICH.—33.

remain on the lands after the expiration of the period fixed, though it had been cut and skidded before that date; in other words, that the true construction of the contract is that the title passed to only so much of the timber as should actually be taken off from the lands within the period of five years from the date of the contract, though it had been cut and skidded. In support of this proposition counsel cite a number of cases passed upon by this Court, claiming that the principle here involved has been settled by the cases thus cited.[1]

This "said timber" evidently refers to the timber sold, which was all the white and Norway pine on the premises. The title was also reserved in Gamble until all the conditions and agreements were fulfilled, and the notes given for the timber fully paid, with interest. The plain intent of the agreement was that, even if the conditions and agreements had otherwise been performed, all timber remaining upon said lands at the expiration of the time limited, whether cut or uncut, should *revert* and become the property of Gamble. The word "revert" has some significance. The use of it clearly shows that, if the title had passed to Gates by the fulfillment of the contract, still all the timber left and remaining upon the lands at the end of five years should revert and pass back to Gamble.

Judgment reversed, with costs of this Court to plaintiff, and new trial granted.

The other Justices concurred.

---

[1] Counsel cited *Green v. Bennett*, 23 Mich. 464; *Monroe v. Bowen*, 26 Id. 523; *Richards v. Tozer*, 27 Id. 451; *Johnson v. Moore*, 28 Id. 3; *Haskell v. Ayres*, 32 Id. 93, 35 Id. 89; *Utley v. Lumber Co.*, 59 Id. 263; *Williams v. Flood,* 63 Id. 487.